**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SIMONE GRIMES,** <br> C/O DIANE A. SELTZER TORRE, ESQUIRE <br> 4800 HAMPDEN LANE, SUITE 200 <br> BETHESDA, MD  20814 <br><br> **Plaintiff,** <br><br> v. <br><br> **FEDERAL HOUSING FINANCE AGENCY** <br> 400 SEVENTH STREET, SW <br> WASHINGTON, DC  20219 <br><br> **Defendant.** | Civil No. |

## COMPLAINT AND JURY DEMAND

Plaintiff Simone Grimes ("Grimes"), through her undersigned counsel, Diane A. Seltzer Torre and the Seltzer Law Firm, brings this action against Defendant Federal Housing Finance Agency ("FHFA") under the Equal Pay Act of 1963, 29 U.S.C. §206(d) ("EPA"), to restrain the unlawful payment of wages to employees of one sex at a rate less than the rate paid to employees of the opposite sex, to collect back wages and other damages due to Ms. Grimes as a result of such unlawful payments, and to remedy the retaliation to which she has been subjected as a result of her exercise of her rights under that statute.  As alleged in detail below, Ms. Grimes alleges that FHFA unlawfully discriminated against her by paying her lower compensation than FHFA paid to a male for performing substantially equal work and that FHFA retaliated against her when she complained of its violations of the law.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as it requires interpretation of the Equal Pay Act, which is a federal law. This action is authorized and instituted pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§216(c) and 217, to enforce the requirements of the EPA, codified as Section 6(d) of the FLSA, 29 U.S.C. §209(d).

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as the parties are citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

3. Venue is proper pursuant to 28 U.S.C. §1391(b) because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

## PARTIES

4. Plaintiff Grimes is a resident of the District of Columbia.

5. Defendant FHFA is an independent federal agency responsible for the effective supervision, regulation and housing mission oversight of Fannie Mae, Freddie Mac, and the Federal Home Loan Bank System. FHFA's principal place of business in Washington, D.C.

6. At all relevant times, Plaintiff Grimes has been an employee of Defendant FHFA within the meaning of 29 U.S.C. § 203(e).

7. At all relevant times, Defendant FHFA has been Plaintiff Grimes' employer within the meaning of 29 U.S.C. § 203(d).

**FACTUAL ALLEGATIONS**

8. Plaintiff Grimes has worked for FHFA since Fall 2010. Since being promoted in 2013, she has held the permanent position of Supervisory Program Management Analyst, GS-15.

9. Melvin Watt was appointed Director of FHFA and assumed that position in January 2014. Although Plaintiff Grimes first met Director Watt when he was appointed to that position, she had very little contact with him in 2014 except at Conservatorship Committee meetings and a few staff briefings on the contract spend and decision points for the Project Management Office's professional services contracts, which was in her portfolio at the time.

10. Prior to August 2014, Larry Stauffer held the position of Special Advisor to the Division of Conservatorship ("DoC"). The Special Advisor position is an Executive position within the DoC. Plaintiff Grimes reported directly to Mr. Stauffer in 2014 and in 2015 received her annual performance review from him.

11. On August 1, 2014, FHFA announced that Larry Stauffer would assume the role of Acting Chief Operating Officer ("COO"). He continues to serve in that role.

12. During the last week of January 2015, then-Deputy Director of DoC Wanda DeLeo asked Plaintiff Grimes to assume Mr. Stauffer's roles and responsibilities as Special Advisor to the DoC. These duties were in addition to Plaintiff Grimes' other duties, and the role included a number of duties that were not previously in her portfolio. His Special Advisor position was an Executive position, which was different from and superior to Ms. Grimes' GS-15 position.

13. Specifically, Mrs. DeLeo told Plaintiff Grimes, "Larry (Stauffer) is Acting COO now, and I'd like you to take on his position as an Acting Executive and assume the full benefits of the Executive position. However, if he comes back within a year, you would have to go back to your prior role and rate of pay. Alternately, I can request a permanent pay increase as a GS-15

to compensate you for taking on the duties, and that would remain in effect even if Larry comes back within a year."

14.     Plaintiff Grimes told Mrs. DeLeo that she would consider the two options. Mrs. DeLeo asked that Plaintiff Grimes take no more than one week, because she had several re-organizations she was working through and needed "to wrap it up." Plaintiff Grimes agreed to that timeframe.

15.     Plaintiff Grimes asked for the rules guiding the appointment and time to decide. She was not provided any rules; rather, she was told that the Special Advisor position would continue until the end of the year, and then should Mr. Stauffer continue to serve as COO, Plaintiff Grimes would remain in the Special Advisor position (at an executive level pay and with associated benefits), and the position would be renewed annually; **or** Plaintiff Grimes would be permanently placed in the Special Advisor position.

16.     On February 2, 2015 and February 3, 2015, Mr. Stauffer reached out to Plaintiff Grimes and asked to talk to her in person. When they met on February 3, 2015, he indicated that he was aware of the offer Plaintiff Grimes had received from Ms. DeLeo. Mr. Stauffer strongly suggested that Plaintiff Grimes not elect to be assigned to an Acting Executive position. He conveyed that he thought he would not serve as Acting COO for long, and therefore Plaintiff Grimes would not receive the executive level benefit for long.

17.     Mr. Stauffer contacted Ms. Grimes three times that week to check in on where she was in the decision process and to again restate his view that Ms. Grimes' acceptance of the Acting Executive position would be "bad for her in the long-run."

18.     On February 6, 2015, Mr. Stauffer sent Plaintiff Grimes his FHFA Special Advisor Job Performance Plan ("JPP") for her to include in her JPP. The JPP is an annual snapshot of

responsibilities that correlate to an FHFA employee's Position Description ("PD") and includes objectives that both the employee and their supervisor agree would demonstrate the successful accomplishment of their PD. After that, Mr. Stauffer came by to again to re-emphasize that he strongly suggested Plaintiff Grimes not take the full benefits of the Acting Executive position. The act of influencing any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person is a violation of 5 U.S. Code § 2302 - prohibited personnel practices.

19. Before deciding what to do, Plaintiff Grimes asked Mrs. DeLeo what she could expect in terms of a permanent pay increase if she took on the responsibilities of Special Advisor in a non-Acting Executive capacity. Mrs. DeLeo advised that she expected it to be in range of twenty percent (20%), which was consistent with the Agency's promotion policy, and "would push for that."

20. Based on Mr. Stauffer's strong suggestion that Plaintiff Grimes would be better taking the pay increase and remaining a GS 15, and Ms. DeLeo's reassurance that the pay increase would be close to 20%, Plaintiff Grimes agreed to that approach and accepted the offer.

21. Starting in February 2015, Plaintiff Grimes reported to Ms. DeLeo as Special Advisor to DoC.

22. When Plaintiff Grimes agreed to the Special Advisor position, she absorbed all of Mr. Stauffer's job duties in addition to maintaining her existing responsibilities.

23. On March 5, 2015, FHFA issued a formal announcement to the Agency and to key contacts at the Enterprises (Fannie Mae, Freddie Mac and CSS) changing Ms. Grimes' position to the Special Advisor for the Division of Conservatorship. OHRM, however, never processed the

position change or updated Ms. Grimes' official Agency Position Description, despite Mrs. DeLeo's requests to do so in March 2015.

24.     In early March 2015, Ms. DeLeo advised Plaintiff Grimes that the FHFA Office of Human Resources (OHRM) had decided on a non-negotiable five percent (5%) salary increase for assuming all of the duties of Special Advisor that Mr. Stauffer performed **and** maintaining her existing responsibilities. Ms. DeLeo was very upset and apologetic and asserted that she had tried several approaches to get OHRM to adjust the salary increase closer to twenty percent (20%), which would have been in line with the salary paid to Mr. Stauffer. Mrs. DeLeo also said that OHRM had initially proposed only two percent (2%) and she had gotten them to raise it to five percent (5%). She said that they would revisit the matter with OHRM in six (6) months should Mr. Stauffer continue to serve as Acting COO and Plaintiff Grimes continue to absorb his Special Advisor responsibilities.

25.     At that time, i.e. in March 2015, Mr. Stauffer, as Acting COO, was the management official over Human Resources and who thus had authority to approve pay increases, as per FHFA's Compensation Policy 102 and 103.

26.     Plaintiff Grimes later contacted Mrs. DeLeo to confirm her understanding of Mrs. DeLeo's original offer and intent with regard to offering Ms. Grimes the Acting Executive role. Their subsequent conversations confirmed Ms. Grimes' understanding of the initial offer and that Mrs. DeLeo's intention in 2015 was to put Ms. Grimes in the Acting role for one full year, renewable in one (1) year increments, and to see if Mr. Stauffer was going to continue to serve as Acting COO. Plaintiff Grimes mentioned to her that the issue of one hundred twenty (120) days was put forward as a rule to prevent her from taking on that role. Mrs. DeLeo responded that those

6

were FHFA Special Advisor Bob Ryan's choices and that a 120-day rule had not been proposed to her as an issue.

27. On June 10, 2015, Mrs. DeLeo announced a quick retirement due to a family illness.

28. Plaintiff Grimes reported to Ms. DeLeo until Mrs. DeLeo's retirement in July 2015.

29. On July 24, 2015, Mr. Ryan assumed the responsibility of Acting Deputy Director of the Division of Conservatorship, which was the position from which Mrs. DeLeo had retired.

30. Mr. Stauffer was, and continues to, serve as acting Chief Operating Officer of the FHFA, which is why he could not and cannot perform the DoC Special Advisor responsibilities that Plaintiff Grimes assumed.

31. Plaintiff Grimes did not receive pay, grade or employment benefits equivalent to, or in the range of, Mr. Stauffer.

32. The FHFA maintains a historical pay table which assigns values to certain positions. Plaintiff Grimes learned that the pay she received was approximately $70,000.00 less per year than the male predecessor whose duties she absorbed. When benefits and bonuses are included, the disparity is over $100,000.00 per year.

33. Although at first, Plaintiff Grimes was not clear about why Mr. Stauffer cared so much about whether or not Plaintiff Grimes accepted the Acting Executive position, it later became clear to her through conversations with Director Watt and other senior agency officials, that it was because Mr. Stauffer wanted to reserve that position in the DoC staffing plan for himself. Upon information and belief, Mr. Stauffer knew that if Plaintiff Grimes continued to act in the Special Advisor position, FHFA would have had to give it to her permanently, per FHFA Merit and Promotion Plan Policy 105, Section III, 2, which describes the process for an accretion of duties promotion for employees who take on the duties of a position of record at a higher level. FHFA

had the option under Section III, 1 of that same policy to compete the position if it was concerned about an accretion of duties; but instead, Mr. Ryan, Mr. Stauffer and Director Watt allowed Plaintiff Grimes, despite her repeated complaints, to continue to perform the functions without proper compensation -- which is exactly what that same policy prohibits.

34. In later discussions with Director Watt, he told Plaintiff Grimes that the reason he and Mr. Ryan had not made an official human resources action to address her EPA issue was that Mr. Stauffer wanted to retain "bump back rights"[i] -- despite Director Watt acknowledging, in that same conversation, that Plaintiff Grimes was performing those duties.

35. Upon information and belief, no one at FHFA other than Mr. Stauffer has occupied two positions while only performing the duties of one.

36. By August 2015, Plaintiff Grimes was growing increasingly concerned about her continued performance of Mr. Stauffer's duties in DOC without being properly compensated. There was no clear indication that Mr. Stauffer would be returning to his Special Advisor - DOC position. Plaintiff Grimes was beginning to realize that she may be required to perform both the Special Advisor role plus her previously assigned regular duties indefinitely without proper compensation.

37. On September 8, 2015, Plaintiff Grimes asked Mr. Ryan to reopen the offer to act in the Executive position, framing the issue as one of unequal pay and position to her predecessor. Mr. Ryan was very agreeable and said that he appreciated the work Plaintiff Grimes was doing. At his request, they agreed to revisit the pay issue after the annual performance review cycle scheduled to occur in early 2016 so that he could get a full sense of the work Plaintiff Grimes was doing and her level of performance.

38. On February 22, 2016, Plaintiff Grimes received her job performance evaluation from Mr. Ryan evaluating her performance of the roles and responsibilities of her predecessor, Mr. Stauffer. Mr. Ryan rated her "Outstanding", which is the highest rating possible at FHFA.

39. Plaintiff Grimes reminded Mr. Ryan that she had been performing Mr. Stauffer's Special Advisor duties but that she was not receiving the full pay or benefits of that position. Mr. Ryan agreed this was accurate and advised her that he would speak to Director Watt and Mr. Stauffer about the matter. Mr. Ryan further conveyed that it should be no issue, but he needed Director Watt's approval to proceed.

40. After that conversation, Plaintiff Grimes checked in with Mr. Ryan every two weeks on the matter.

41. In March 2016, Plaintiff Grimes again checked in with Mr. Ryan, who indicated that he had had conversations with Mr. Stauffer and that there were "lots of reasons" they could not open the position. He kept quoting a 120-day rule but did not provide it to Plaintiff Grimes. Ms. Grimes was very suspicious that Mr. Stauffer was now quoting rules to officials less familiar with Agency practices that he had not raised with Ms. DeLeo who was familiar with Agency practices.

42. Plaintiff Grimes reviewed Policy 105 and noted that there is no clear language that would have prevented Mr. Ryan from either extending the Acting Executive position again, amending her position as an accretion of duties, or allowing her to compete for the position. Indeed, the policy contains several provisions for promotion based on accretion of duties.

43. In April 2016, Plaintiff Grimes expressed to Mr. Ryan that she was growing frustrated with the situation. Mr. Ryan stated that he had one more issue to clear with Mr. Stauffer before proceeding. Plaintiff Grimes advised Mr. Ryan that in February 2015, Mr. Stauffer had

actively dissuaded her from assuming the full benefits of the Executive role, and she was cautious of his decision-making authority in this matter.

44. This was the first of many disclosures by Plaintiff Grimes to senior Agency officials that Mr. Stauffer had engaged in the prohibited personnel practice "Influencing Withdrawal from Competition."

45. Mr. Ryan assured her that the decision would be the Director's, not Mr. Stauffer's, and should be cleared soon.

46. In April 2016, Director Watt contacted Plaintiff Grimes stating that they needed to meet off site to discuss some things that he had been discussing with Mr. Ryan relative to her work at FHFA.

47. Plaintiff was disturbed by what was unfolding, especially when put in context with Director Watt's continued unwelcome and unwanted sexual advances towards her. Specifically, the pattern was that Plaintiff Grimes would raise the pay issue with Mr. Ryan; he would state that the decision was with Director Watt; Director Watt would contact her meet with him; and when she agreed to meet with him in the hopes of discussing the pay equity issue, he would sexually harass her.

48. By December 2016, it was clear that Plaintiff Grimes' rejection of Director Watt's sexual advances was directly related to Mr. Ryan's failure to implement the appropriate parity in pay and position as required by law.

49. Ultimately, Ms. Grimes filed claims of sexual harassment and retaliation against Defendant FHFA to address this misconduct. Those claims are still pending.

50. On December 21, 2016, Mr. Ryan announced that Director Watt promoted Robert Fishman (male) to a new Executive position (Senior Associate Director) that they had created

specifically for Mr. Fishman in DoC.  The position had been created and awarded to Mr. Fishman without competition.

51.     On January 4, 2017, Plaintiff Grimes questioned Director Watt about the failure to address her pay adjustment while simultaneously creating a new position in DoC for Mr. Fishman. Director Watt directed her back to their prior conversations, asserting that "You didn't promise me anything, and I didn't promise you anything."  Director Watt was referencing the fact that she did not promise him sexual favors, so he did not promise her a pay increase.

52.     On February 8, 2017, Plaintiff Grimes received her job performance which again rated and evaluated her performance of the roles and responsibilities of her predecessor, Mr. Stauffer.  Again, her rating was "Outstanding."  Plaintiff Grimes asked Mr. Ryan why her request for pay parity had not been resolved and asked if he perceived that she had been performing "below an executive level." Mr. Ryan affirmed that she had been performing at a level far beyond my grade and pay, and "not to throw the Director under the bus, but he's been dragging his feet."

53.     Plaintiff later requested formal documentation from OHRM showing the roles and responsibilities that Plaintiff Grimes formally absorbed in 2015.  Jerri Fitzpatrick from OHRM gave her a copy of a detailed write up from then-Deputy Director DeLeo of the duties previously performed by Mr. Stauffer and requesting that Plaintiff Grimes receive a pay increase and change in title, thus triggering a change in her Position Description.  Plaintiff Grimes asked Ms. Fitzpatrick for her updated Position Description.  Ms. Fitzpatrick acknowledged that she had not been the case manager assigned to this matter and said she would secure the documents from either Takisha Koonce or Janice Obeido.

54.     Ms. Fitzpatrick responded a few days later that OHRM had apparently "dropped the ball" and never officially updated Plaintiff Grimes' Position Description or title within FHFA's

official records.  She advised Plaintiff Grimes that the memo should serve as an addendum to her prior Position Description.

55. Plaintiff Grimes also requested and received a copy of Mr. Stauffer's Position Description as Executive Special Advisor.  She ticked and tied all of the responsibilities given to her (and OHRM) against his PD and noted no differences.

56. Further, since none of her prior duties were removed, when her prior Position Description **plus** the roles outlined in the memo regarding her duties as Special Advisor for DoC) are taken into consideration, Plaintiff Grimes performed **twice** as much work than Mr. Stauffer was required to perform – yet was not compensated accordingly.

57. In 2018, as part of an unrelated initiative on which Plaintiff Grimes was working, she was given access to OHRM's historical pay tables.  These pay tables show the substantial monetary difference that FHFA assigned to the position of Special Advisor for DoC versus what Plaintiff Grimes was being paid.  On average, Plaintiff Grimes was paid $0.75 per dollar for the same work when performed by a male – not including benefits.

58. Plaintiff Grimes performed these duties until Mr. Stauffer moved her office in January 2018 to the Office of the Chief Operating Officer.

## COUNT I - EQUAL PAY ACT VIOLATION: WAGES

59. Plaintiff incorporates as though restated each of the factual allegations set forth in paragraph 1 through 58.

60. Beginning in February 2015 and continuing through January 2018, Defendant FHFA violated 29 U.S.C. §206(d) (1), which is prohibited by 29 U.S.C. §215(a)(2), by paying Plaintiff Grimes lower compensation than Defendant FHFA paid to a male to perform a job that

required equal skill, effort and responsibility and which was performed under similar working conditions.

61. The difference in pay between Plaintiff Grimes and her male comparator was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to sex.

62. Defendant FHFA has unlawfully withheld the payment of wages and benefits due to Plaintiff Grimes.

63. Defendant FHFA has caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on sex, in violation of the Equal Pay Act.

64. The unlawful practices complained of were a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. §255(a). Because Defendant FHFA has willfully violated the Equal Pay Act, a three (3) year state of limitations applies to the complained of violations.

65. As a result of Defendant FHFA's unlawful conduct, Plaintiff Grimes has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses, as well as non-economic damages including but not limited to emotional and physical distress, humiliation, embarrassment, and mental anguish.

66. Plaintiff is entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including but not limited to back pay, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, litigation costs, and other relief pursuant to 29 U.S.C. §216(b).

### **COUNT II - EQUAL PAY ACT VIOLATION: RETALIATION**

67. Plaintiff incorporates as though restated each of the factual allegations set forth in paragraph 1 through 66.

68. Plaintiff Grimes engaged in protected activity under the Equal Pay Act, including complaining to FHFA about gender discrimination in compensation and filing internal complaints regarding the disparity in compensation between her and Mr. Stauffer.

69. Defendant FHFA took adverse employment actions against Plaintiff Grimes for engaging in protected activity by harassing her and refusing to rectify pay disparities unless she submitted to Director Watt's unwelcome and unwanted sexual advances.

70. Defendant FHFA has unlawfully withheld the payment of wages and benefits due to Plaintiff Grimes.

71. The unlawful practices complained of were a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. §255(a). Because Defendant FHFA has willfully violated the Equal Pay Act, a three (3) year state of limitations applies to the complained of violations.

72. As a result of Defendant FHFA's unlawful conduct, Plaintiff Grimes has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial losses, as well as non-economic damages including but not limited to emotional and physical distress, humiliation, embarrassment, and mental anguish.

73. Plaintiff is entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including but not limited to back pay, liquidated damages, pre-judgment and post-judgment interest, attorneys' fees, litigation costs, and other relief pursuant to 29 U.S.C. §216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Grimes prays that the Court:

1. Grant a permanent injunction enjoining Defendant FHFA from paying female employees lower compensation than their male comparators for performing equal work, from discriminating against female employees with respect to their

compensation, benefits, promotions, advancement, opportunities, and other terms and conditions of employment; and from engaging in any other employment practices that discriminate on the basis of sex;

2. Order Defendant FHFA to pay appropriate back wages and lost benefits in amounts to be determined at trial; an equal sum as liquidated damages; and prejudgment interest resulting from Defendant FHFA's unlawful payment of lower compensation to Plaintiff Grimes than compensation paid to her male comparator for performing substantially equal work;

3. Order Defendant FHFA pay all of Plaintiff Grimes' attorneys' fees and costs;

4. Enter judgment in favor of Plaintiff Grimes and against Defendant FHFA in the amount of $1,000,000.00; and

5. Order such other relief as this Court deems necessary and proper.

### JURY TRIAL DEMAND

Plaintiff Grimes requests a jury trial on all questions of fact raised by her complaint.

Respectfully submitted,

**THE SELTZER LAW FIRM**

s/ Diane A. Seltzer Torre
Diane A. Seltzer Torre, Esquire
DC Bar No. 434571
4800 Hampden Lane, Suite 200
Bethesda, MD  20814
301-500-1550
dseltzer@seltzerlawfirm.com
Attorneys for Plaintiff Simone Grimes

Dated: August 20, 2018